# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| E&R VENTURE PARTNERS, LLC, a California limited liability company,<br><br>    Plaintiff,<br><br>vs.<br><br>PARK CENTRAL PLAZA 32, LLC, a revoked Nevada limited liability company,<br><br>    Defendant | Case No.: 2:16-cv-02959-RFB-GWF<br><br>**ORDER**<br><br>**Motion to Compel (ECF No. 25)** |

This matter is before the Court on Plaintiff's Motion to Compel Defendant to Disclose Information and Documentation Concerning the NSB Settlement Agreement (ECF No. 25), filed on April 5, 2017. Defendant filed its Response (ECF No. 27) on April 19, 2017, and Plaintiff filed its Reply (ECF No. 31) on April 26, 2017. Also before the Court is Defendant's Motion for Protective Order (ECF No. 29), filed on April 24, 2017. Plaintiff filed its Response (ECF No. 34) on April 28, 2017. The Court conducted a hearing in this matter on May 1, 2017.

## BACKGROUND

Plaintiff E&R Venture Partners, LLC is the assignee of the law firm of Enenstein Ribakoff Lavina & Pham, APC ("the Law Firm") which represented Defendant Park Central Plaza 32, LLC ("Park Central") in an underlying lawsuit against Nevada State Bank. Park Central and the Law Firm entered into a written retainer agreement on April 4, 2014 pursuant to which the Law Firm agreed to represent Park Central in the existing lawsuit against Nevada State Bank and to litigate against another law firm and attorney in connection with their representation of Park Central. *Motion to Compel* (ECF No. 27), *Exhibit B, Retainer Agreement*. The retainer agreement stated that the Law Firm was entitled

to a fee of one third (1/3) of the gross recovery obtained by Park Central before a lawsuit was filed. If Park Central obtained a recovery after the lawsuit was filed, then the Law Firm was entitled to a fee of forty percent (40%). *Id.* at pg. 3, ¶ 5. The Law Firm represented Park Central in the lawsuit against Nevada State Bank until early 2015 when a judgment was entered in Nevada State Bank's favor. New counsel substituted in on behalf of Park Central on April 2, 2015, and filed an appeal on Park Central's behalf. Park Central and Nevada State Bank thereafter settled the case in November 2015. Plaintiff E&R Venture Partners, LLC, alleges that Park Central received a payment of money pursuant to the settlement with Nevada State Bank.

In this action, Plaintiff seeks recovery of the attorneys' fees that the Law Firm was entitled to recover under the terms of the retainer agreement. Plaintiff alleges that it is entitled to recover 40 % of the gross proceeds of the settlement between Park Central and Nevada State Bank, or the reasonable value of the Law Firm's legal services to Park Central which Plaintiff alleges are $221,380.00. *Complaint* (ECF No. 1), ¶¶ 17-18. Park Central disputes whether Plaintiff is entitled to any fees on the grounds that the Law Firm was terminated for cause based on the poor quality of its legal services which resulted in the case being lost at the district court level. Plaintiff, in turn, disputes whether the Law Firm was actually discharged as Park Central's counsel when the other attorney was substituted in to file and handle the appeal.

Plaintiff's Interrogatory Nos. 1, 2 and 3 ask Park Central to state the amount of money it received in the Nevada State Bank settlement; the method by which the payment was made; and the identity of all persons who received any of the settlement proceeds. Plaintiff's Requests for Production Nos. 1-4 request production of the settlement agreement, documents relating to the amount of money received by Park Central, the method of payment, and documents relating to the distribution or transfer of settlement proceeds to other persons. Park Central objected to these discovery requests on the grounds that they are irrelevant and because the settlement agreement between it and Nevada State Bank is confidential. There is no indication that the settlement agreement between Park Central and Nevada State Bank is subject to a protective order entered by the court in the underlying action. The terms of the settlement were made confidential by a private agreement between the parties.

Plaintiff argues in its motion to compel that the discovery requests are relevant to determining

the attorney's fees the Law Firm is entitled to recover and to enforcing its attorney's fee lien against any persons to whom settlement proceeds have been distributed. Plaintiff also argues that the relevance and materiality of the requested documents and information outweigh Park Central's and Nevada State Bank's interest in the confidentiality of their settlement agreement. In its response to Plaintiff's motion to compel and in support of its motion for protective order, Park Central argues that Plaintiff is not entitled to obtain the settlement agreement or related information unless and until it establishes the right to recovery under the contingent fee agreement.

## **DISCUSSION**

There is no federal privilege preventing the discovery of settlement agreements and related documents. *Board of Trustees of Leland Stanford Junior University v. Tyco Intern. Ltd.*, 253 F.R.D. 521, 523 (N.D.Cal. 2008); *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 282 (N.D. Cal. 2015); and *Thermal Design, Inc. v. Guardian Building Products, Inc.*, 270 F.R.D. 437, 438 (E.D.Wis. 2010). The court in *Board of Trustees of Leland Stanford* noted that Congress enacted Fed. R. Evid. 408 to promote the settlement of disputes by limiting the admissibility of settlement materials, rather than prohibiting their discovery. 253 F.R.D. at 523 (quoting *In re Subpoena Issued to Commodity Futures Trading Commission*, 370 F.Supp.2d 201, 211 (D.D.C. 2005)). Under Rule 408, evidence of compromise offers or settlement negotiations are inadmissible to prove or disprove the validity or amount of a disputed claim. Such evidence may, however, be admitted for other purposes.

Although not amounting to a recognized privilege, public policy generally favors confidential settlements because they often assist parties in resolving their disputes by mutual agreement. Accordingly, "[t]he secrecy of a settlement agreement and the contractual rights of the parties thereunder deserve court protection." *Kalinauskas v. Wong*, 151 F.R.D. 363, 365 (D.Nev. 1993). There are, however, limits to such protection. The court in *Kalinauskas* refused to enforce a confidentiality clause which prohibited a former plaintiff in a sex discrimination lawsuit from giving relevant testimony in a similar lawsuit brought by another employee against the same employer. Some courts require a party seeking disclosure of a confidential settlement agreement to make a particularized showing of a likelihood that admissible evidence will be generated by disclosure of the terms of the confidential settlement agreement. *Young v. State Farm Mut. Auto. Ins. Co.*, 169 F.R.D. 72, 77

(S.D.W.Va. 1996) (citing *Bottaro v. Hatton Associates*, 96 F.R.D. 158, 159 (E.D.N.Y. 1982)); and *McCullough v. Nichols*, 1995 WL 679265, at *2(Dist.Ct. of Mass. Aug. 3, 1995). In *Young* and *McCullough*, the courts held that the plaintiff-attorneys were entitled to discover the confidential settlement agreements between their former clients and third parties for purposes of proving the reasonable value of the attorney's fees that plaintiffs sought to recover.

Park Central allegedly terminated the Law Firm as its counsel prior to the settlement with Nevada State Bank. Federal district court decisions, construing Nevada law, state that when the client discharges its attorney prior to a settlement, the attorney is entitled to recover his or her attorney's fees in quantum meriut. The attorney is not entitled to recover the percentage fee due under the terms of the contingent fee agreement. This rule is necessary to preserve the client's right to terminate the attorney's representation with or without cause, while ensuring that the discharged attorney is fairly compensated for his services. *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby*, 401 F.Supp.2d 1120, 1124 (D.Nev. 2005); *Merrick v. Sasser*, 2012 WL 934311, at *3 (D.Nev. 2012); and *Cashman v. Colorado Cas. Co.*, 2011 WL 2149606, at *2 (D.Nev. 2011). *See also Golightly v. Cassner*, 125 Nev. 1039, 281 P.3d 1176 (Table), 2009 WL 1470342, at *2 (Feb. 26, 2009, unpublished disposition) (affirming district court's award of quantum meruit damages to a discharged attorney).

The possibility that Plaintiff will be limited to recovering in quantum meruit does not render the terms of the settlement agreement between Park Central and Nevada State Bank irrelevant. "Quantum meruit recovery is based on the amount 'that a party has received from another which [would be] unjust for him to retain without paying for it.'" *Merrick v. Sasser*, 2012 WL 934311, at *3 (quoting *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby*, 583 F.3d 12, 1238 (9th Cir. 2009)). Quantum meriut damages are determined by the reasonable value of the retained services. *Id.* In making that determination, the court should consider several factors set forth in Nevada Rule of Professional Conduct 1.5(a), including *the amount involved and the result obtained. Id.* at *3. The underlying case settled approximately seven months after the Law Firm was allegedly discharged. In determining the Law Firm's reasonable attorney's fees, it is appropriate to consider the extent to which its legal services contributed to, or detracted from, the ultimate recovery. Plaintiff would be unfairly prejudiced if it was denied information regarding the amount of the settlement, while Park Central is permitted to argue that

the Law Firm should be denied any fees, or have its fees substantially reduced, because of its alleged mishandling of the underlying lawsuit. In determining the reasonable value of the Law Farm's legal services to Park Central, all relevant factors should be considered, including the amount of the settlement that was obtained after the Law Firm was terminated. If Plaintiff establishes that the Law Firm was still Park Central's counsel at the time of the settlement, and therefore entitled to the 40 % contingent fee, then its right to obtain discovery regarding the settlement agreement is even more clear.

Because the Park Central-Nevada State Bank settlement agreement is relevant and material to Plaintiff's claims in this case, Plaintiff is entitled to obtain documents and information relating to that settlement, notwithstanding the confidentiality agreement between Park Central and Nevada State Bank. However, the settlement agreement does not need to be publicly disclosed at this point in the lawsuit.[1] The settlement agreement, and information, and documents sought by Plaintiff shall be produced subject to a protective order that prohibits their disclosure to third persons who have no interest in this litigation. The parties shall prepare and submit an appropriate protective order to the Court.

Rule 37(a)(5) of the Federal Rules of Civil Procedure provides that if a motion to compel is granted, the court must, after giving an opportunity to be heard, require the party whose conduct necessitated the motion, to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. The court cannot award expenses, however, if the movant filed the motion before attempting in good faith to obtain the discovery without court action, or if the opposing party's response or objection was substantially justified, or if other circumstances makes an award of expenses unjust. Having considered this matter, the Court finds that Park Central's refusal to produce any information about the settlement agreement, including the confidentiality clause itself, was not reasonable or substantially justified. Plaintiff was willing to have the settlement agreement and information relating thereto made subject to a protective order as described in the preceding paragraph. Park Central refused to produce the documents subject to the proposed protective order. Park Central's

---

[1]The amount of the settlement or other relevant terms of the settlement agreement will presumptively be matters of public record if they are introduced in evidence at trial or in support of or opposition to a motion for summary judgment.

reasons for refusing to give Plaintiff access to the settlement agreement are without merit. It accuses Plaintiff of "bullying tactics" by threatening to file a motion to compel and for sanctions if Park Central refused to produce the requested documents and information. Plaintiff's threat was not a "bullying tactic." Rather, it was a warning of the action Plaintiff would take in response to Defendant's unreasonable refusal to provide discovery. Plaintiff is therefore entitled to an award of reasonable expenses, including attorney's fees, incurred in pursuing the motion to compel. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel Defendant to Disclose Information and Documentation Concerning the NSB Settlement Agreement (ECF No. 25) is **granted** subject to the entry of a protective order as described above. The parties shall submit the proposed protective order to the Court within seven (7) days of the filing of this order. Defendant shall thereafter produce the requested documents and information within seven (7) days from the entry of the protective order.

**IT IS FURTHER ORDERED** that Plaintiff is awarded its reasonable expenses, including attorney's fees, incurred in pursuing its motion to compel. Plaintiff shall file a memorandum, supported by affidavit of counsel, establishing the amount of attorney's fees and costs incurred in pursuing its motion to compel by **May 15, 2017**. The memorandum shall provide a reasonable itemization and description of work performed, identify the attorney(s) or staff member(s) performing the work, the customary fee of the attorney(s) or staff member(s) for such work, and the experience, reputation and ability of the attorney performing the work. Defendant shall have until **May 29, 2017** in which to file a responsive memorandum addressing the reasonableness of the costs and fees sought, and any equitable considerations deemed appropriate for the court to consider in determining the amount of costs and fees which should be awarded. Plaintiff shall have until **June 5, 2017** to file a reply.

**IT IS FURTHER ORDERED** that Defendant's Motion for Protective Order (ECF No. 29) is **denied**.

DATED this 2nd day of May, 2017.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge